IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| DOROTHY M. MCCURDY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 2:10CV945-SRW |
| ) | (WO) |
| MICHAEL J. ASTRUE, Commissioner ) | |
| of Social Security, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OF OPINION**

Plaintiff Dorothy M. McCurdy brings this action pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3) seeking judicial review of a decision by the Commissioner of Social Security ("Commissioner") denying her application for a period of disability and disability insurance benefits and her application for supplemental security income under the Social Security Act. The parties have consented to entry of final judgment by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c). Upon review of the record and briefs submitted by the parties, the court concludes that the decision of the Commissioner is due to be affirmed.

**BACKGROUND**

Plaintiff has an eleventh grade education. She worked as a cook at a restaurant between 1989 and 2005 and as a cook at a gas station between January 2006 and March 2007. (R. 31, 35, 138,142, 144, 218). On August 19, 2008, when she was fifty years old, plaintiff protectively filed the present applications, alleging disability since March 1, 2007,

due to diabetes, poor eyesight, problems with swelling in her legs and high blood pressure. (R. 112-18, 133, 137). After plaintiff's applications were denied at the initial administrative level, plaintiff requested a hearing before an administrative law judge. (R. 50-101). An ALJ conducted a hearing on December 4, 2009, in which she heard testimony from plaintiff and from a vocational expert. (R. 25-48).

The ALJ rendered a decision on January 22, 2010. She determined that plaintiff has "severe" impairments of "insulin dependent diabetes mellitus, fibromyalgia, and obesity" and a non-severe impairment of hypertension (R. 13). She found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of any of the impairments in the "listings" and, further, that plaintiff retained the residual functional capacity to perform "light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following exceptions/considerations: she requires a sit/stand option in 60 minute intervals; can occasionally climb ramps/stairs; should never climb ladders/ropes/scaffolds, kneel, or crawl; and should avoid all exposure to unprotected heights and hazardous machinery." (R. 14). The ALJ concluded that, due to pain, plaintiff "can perform simple, routine, and repetitive tasks involving simple, work-related decisions with few work place changes." (Id.). The ALJ found that, while plaintiff is unable to perform her past relevant work, there are a significant number of jobs in the national economy which the plaintiff can perform. (R. 18). The ALJ concluded that plaintiff has not been under a disability as defined in the Social Security Act from her alleged onset date, March 1, 2007, through the date of the ALJ's

decision. (R. 19). On September 23, 2010, the Appeals Council denied plaintiff's request for review (R. 1-4) and, accordingly, the decision of the ALJ stands as the final decision of the Commissioner.

## STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The court does not reweigh the evidence or substitute its judgment for that of the Commissioner. Rather, the court examines the administrative decision and scrutinizes the record as a whole to determine whether substantial evidence supports the ALJ's factual findings. Davis v. Shalala, 985 F.2d 528, 531 (11th Cir. 1993); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991). Substantial evidence consists of such "relevant evidence as a reasonable person would accept as adequate to support a conclusion." Cornelius, 936 F.2d at 1145. Factual findings that are supported by substantial evidence must be upheld by the court. The ALJ's legal conclusions, however, are reviewed *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. Davis, 985 F.2d at 531. If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, the ALJ's decision must be reversed. Cornelius, 936 F.2d at 1145-46.

## DISCUSSION

Plaintiff contends that the ALJ's decision is not supported by substantial evidence and should be reversed because the ALJ failed to apply the Eleventh Circuit pain standard

properly and erred in discounting plaintiff's testimony of disabling pain.[1]  She further argues that the ALJ committed reversible error by failing to consider her impairments in combination.

ALJ's Consideration of Plaintiff's Pain Testimony

In the Eleventh Circuit, a claimant's assertion of disability through testimony of pain or other subjective symptoms is evaluated pursuant to a three-part standard. "The pain standard requires '(1) evidence of an underlying medical condition and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.'" Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005)(quoting Holt v. Sullivan, 921 F.2d 1221, 1223 (11th Cir. 1991)).  If this standard is met, the ALJ must consider the testimony regarding the claimant's subjective symptoms. Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992).  Although the ALJ is required to consider the testimony, the ALJ is not required to accept the testimony as true; the ALJ may reject the claimant's subjective complaints.  However, if the testimony is critical, the ALJ must articulate specific reasons for rejecting the testimony.  Id.[2]

---

[1] Plaintiff testified that, while she has "some good days," her pain is at a level of eight or nine on a scale of ten most of the time.  (R. 34-35).

[2] See also Social Security Ruling 96-7p, 61 Fed. Reg. 34483-01 (July 2, 1996):

> When evaluating the credibility of an individual's statements, the adjudicator must consider the entire case record and give specific reasons for the weight given to the individual's statements.  The finding on the credibility of the individual's statements cannot be based on an intangible or intuitive notion about an individual's credibility.  The reasons for the credibility finding must be grounded in the evidence and articulated in the determination or decision.  It is not sufficient to make a conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible."  It is

Plaintiff argues that the ALJ "never specifically mentions the Eleventh Circuit Pain Standard." (Plaintiff's brief, p. 11). What matters, however, is whether the ALJ applied the correct legal standard in assessing plaintiff's subjective complaints. See Wilson v. Barnhart, 284 F.3d 1219, 1225 -1226 (11th Cir. 2002)("Although the ALJ does not cite or refer to the language of the three-part test in *Holt,* his findings and discussion indicate that the standard was applied. Furthermore, the ALJ cites to 20 C.F.R. § 404.1529, which contains the same language regarding the subjective pain testimony that this Court interpreted when initially establishing its three-part pain standard."). In this case, the ALJ cited 20 C.F.R. 404.1529 and its Title XVI counterpart, 20 C.F.R. 416.929, and described the required analysis. (R. 14). Additionally, the ALJ found "that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" (R. 17) – *i.e.*, that the requirements of the Eleventh Circuit pain standard are satisfied. As noted above, satisfaction of the pain standard does not require that the ALJ accept a claimant's testimony regarding subjective symptoms as true. Instead, the ALJ is required to *consider* the testimony. Even when the testimony is critical to the claim, the ALJ may reject it if she articulates adequate reasons, supported by substantial evidence of record, for doing so. Marbury, 957 F.2d at 839.

Plaintiff argues that the ALJ's credibility assessment does not include the specific reasons required by Eleventh Circuit law. (Plaintiff's brief, pp. 11-12). However, plaintiff

---

also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

5

quotes only the ALJ's credibility finding – *i.e.*, that the plaintiff's statements regarding her symptoms "are not credible to the extent that they are inconsistent with the above residual functional capacity assessment." (Id., p. 12)(citing R. 17). In the discussion following her credibility finding, the ALJ noted: (1) specific inconsistencies between plaintiff's testimony and other evidence of record;[3] (2) plaintiff's testimony that she takes over-the-counter Tylenol for pain;[4] (3) the consultative physician's examination results – including his observations of poor cooperation and poor effort – and his diagnosis of malingering;[5] (4) the record of noncompliance revealed in treatment notes provided by Community Care Network;[6] (5) plaintiff's failure to keep numerous medical appointments;[7] and (6) that plaintiff's testimony

---

[3] The ALJ cited plaintiff's testimony that "she became unable to work in March 2007 due to swelling of her hands and feet and inability to drive due to blurred vision" (R. 17; see R. 30-32) and contrasted it with: (1) plaintiff's report to Dr. Colley in October 2006 that she had not driven in eight years due to her poor vision; (2) plaintiff's corrected vision of 20/60 for distance and 20/40 for near vision as recorded in a consultative eye examination; (3) plaintiff's report to a disability specialist in October 2008 that she had not sought the care of an eye doctor and could see well and read with over-the-counter glasses. (R. 18; see R. 219, 225, 356; see also R. 30 (plaintiff's hearing testimony that she stopped driving in 2007 because her "eyes got blurry and [she] couldn't hardly see, and [her] daughter started taking [her] places")).

[4] See R. 33 (plaintiff's testimony that she takes "something like a Tylenol or something like that" for pain).

[5] See Exhibit 3F. Plaintiff notes that this examination took place in connection with a previous application for benefits and on October 11, 2006, "a few months short of three years" before the hearing. (Plaintiff's brief, p. 7). While this is so, the examination predates plaintiff's alleged onset date of March 1, 2007, by less than five months. The ALJ did not err by considering it.

[6] Plaintiff testified that Community Care is her primary medical treatment provider, that it is a "free clinic" that gives her the medication she needs, and that it is available in her area once or twice a month. (R. 41-42). The Community Care treatment notes reflect seventeen examinations between September 2006 and October 2009. (Exhibits 9F, 12F, 17F). Treatment notes for eleven of these seventeen office visits include plaintiff's report that she had been out of her diabetes medication for periods ranging from two days to two weeks (See R. 253, 311, 327, 331, 333, 365, 369-70, 373, 385-86, 395, 413). Other treatment notes of record indicate that plaintiff was not monitoring her blood sugar routinely (R. 310, 373).

[7] Plaintiff was a "no show" for appointments at Community Care in August, October and December of 2008 and January and March of 2009. (R. 329, 377, 381, 383-84, 387, 393-94).

is inconsistent with her medical records, which do not evidence disabling impairments.[8] (R. 17-18). The ALJ stated adequate reasons, supported by substantial evidence of record, for crediting plaintiff's pain testimony only in part.[9, 10]

---

[8] Plaintiff testified that, since March 2007, she had lost forty pounds (from 220 pounds down to 180 pounds), she "guess[ed]" due to her diabetes. (R. 29). The medical record reveals that she weighed 183 pounds on February 21, 2007 (R. 279) and that her weight remained in the 180s thereafter through 2008 and 2009 with the single exception of a recorded weight of 174 in July 2008. (R. 162, 279, 329, 331, 333, 367, 371, 373, 375, 379). Plaintiff also testified that her most severe condition was swelling of her feet, hands and arms. She stated that she quit working because of swelling in her feet and hands, that they swell "all the time[,]" and that her legs also swell "[a]ll the time[.]" She testified that she had experienced swelling in her hands and arms for "some years," "ever since [she] became a diabetic[,]" and that her arms swell up "rea[l] big ... [m]ostly all the time." (R. 31-32, 41). However, in *all* of plaintiff's sixteen physical examinations at Community Care since February 21, 2007 – nine days before her alleged onset date – the examining practitioner expressly noted the absence of edema in plaintiff's extremities, even on the occasions on which plaintiff complained of extremity pain. (See R. 367, 371, 373, 375, 379, 385, 389, 391, 397, 399, 401, 403, 405, 407, 410). Plaintiff testified that, even when she is taking her medication, her blood sugar "still runs like 200 and 300." (R. 40). As noted above, plaintiff was more often than not out of compliance with regard to her medication (see n. 6, *supra*). At plaintiff's July 15, 2009 visit to Community Care, her blood sugar measured 108. (R. 367). At her next appointment, on October 30, 2009, her blood sugar was recorded at 371. She reported, however, that she had been out of insulin for two days and that her blood sugar had been in the 130s before she ran out of medication. (R. 365).

[9] Plaintiff contends that the ALJ's conclusion that plaintiff experiences pain sufficient to limit her to simple, routine, repetitive tasks is "sufficient to support a finding of disability under the pain standard." (Plaintiff's brief, pp. 12-13). However, the ALJ included the limitation in her hypothetical question to the vocational expert, who responded by listing jobs an individual with plaintiff's limitations can do. (R. 43-46). Plaintiff also points to her diagnosis of fibromyalgia and argues that it supports her testimony of disabling pain. (Plaintiff's brief, p. 13). The ALJ found plaintiff's fibromyalgia to be a severe impairment and credited plaintiff's testimony of pain partially. Plaintiff's physician first suspected fibromyalgia in April 2009, and diagnosed it in May 2009. (See R. 373-76; see also R. 373, emphasizing that plaintiff was in no apparent distress ("NAD!") and was not checking her blood sugars and was noncompliant with taking her medications). Two months later, on July 15, 2009, the doctor noted that plaintiff's fibromyalgia was "[s]table." (R. 368). He described her symptoms as "now controlled" and "[i]mproved w/ glycemic control[.]" (R. 368). At plaintiff's next office visit, on October 30, 2009, the doctor diagnosed only diabetes mellitus and controlled hypertension. (R. 365-66). The fibromyalgia diagnosis, which was considered by the ALJ, does not impeach her decision.

[10] Plaintiff challenges the ALJ's determination that she requires a sit/stand option in 60-minute intervals, citing her hearing testimony that she can stand for "no more than thirty minutes and sit for no more than thirty-five to forty minutes." (Plaintiff's brief, p. 11; see also R. 35-36 (plaintiff's hearing testimony that she can stand "[m]aybe about for 30 minutes or something like that" and sit for "[m]aybe about 35, 40 minutes")). Plaintiff argues, "In the absence of any RFC findings or medical source statement from a treating or examining source citing an ability to sit or stand for sixty minutes it would appear that the ALJ's findings

ALJ's Consideration of Plaintiff's Combination of Impairments

Plaintiff argues that the consultative examination upon which the ALJ relied "notes anxiety, depression, and migraine headaches, all of which escape mention by the ALJ" and, also, that the ALJ considered plaintiff's "diagnosed and treated hypertension to be a non-severe impairment despite [t]he [p]laintiff's testimony that her hypertension is not adequately controlled and is elevated every time she goes to the doctor." (Plaintiff's brief, p. 14). Plaintiff contends that the ALJ erred by failing to consider the combination of plaintiff's severe and non-severe impairments in assessing her residual functional capacity.

While anxiety, depression and migraine headaches are noted in the October 2006 consultative examination, this is in the portion of Dr. Colley's report bearing the heading "PAST MEDICAL HISTORY." Dr. Colley noted plaintiff's past medical history to be "[p]ositive for anxiety and depression and migraine headaches on the average of once a week that last all day and are unresponsive to over-the-counter medication." (R. 219). Plaintiff's chief complaints, however, did not include these impairments. (R. 218). Dr. Colley did not diagnose anxiety, depression or migraines. (R. 222). Plaintiff did not allege anxiety, depression, or migraine headaches as a basis for her claims of disability and, at the hearing.

---

regarding the sit/stand time limits cannot be supported by substantial evidence." (Plaintiff's brief, p. 11). However, no physician of record has concluded that plaintiff requires a sit/stand option at more frequent intervals. In the consultative examination four and a half months before the alleged onset date, plaintiff told Dr. Colley that she "has no difficulty sitting, it is getting up that causes problems[,]" and that she "can stand for 1-2 hours without pain[.]" (R. 218-19). Plaintiff's argument is without merit. The ALJ's RFC assessment may be supported by substantial evidence, even in the absence of an opinion from an examining medical source about plaintiff's functional capacity. See Green v. Social Security Administration, 223 Fed. Appx. 915, 923 (11th Cir. 2007)(unpublished opinion)(ALJ's RFC assessment supported by substantial evidence where he rejected treating physician's opinion properly and formulated the plaintiff's RFC based on treatment records, without a physical capacities evaluation by any physician).

made no mention of anxiety, depression, or migraines, even when the ALJ gave her the opportunity to identify any other conditions that keep her from working. (See R. 31-42, 137). The record includes no evidence of mental health treatment. A non-examining psychologist reviewed plaintiff's file and completed a Psychiatric Review Technique Form finding no medically determinable mental impairment. (Exhibit 14F). The ALJ did not err by failing to mention these impairments.

It does not appear to the court that plaintiff testified "that her hypertension is not adequately controlled and is elevated every time she goes to the doctor[,]" as plaintiff argues. (Plaintiff's brief, p. 14). Plaintiff's testimony refers, instead, to her cholesterol level.[11] Even if this testimony were as counsel argues, however, it is contradicted by the medical record. (See R. 390, diagnosis of "HTN - well controlled," and R. 334, diagnosis of "HTN, contr"; see also R. 252, 312, 329, 331, 365, 367, 373, 375, 379, 385). Plaintiff points to no evidence of functional limitations arising from her hypertension; the ALJ did not err in finding it to be a non-severe impairment. Additionally, the ALJ's decision indicates that she considered

---

[11] Plaintiff testified as follows:

Q   . . . And you stated that you have hypertension and high cholesterol.

A   Yes, ma'am.

Q   Do those cause any symptoms or are they reasonably well controlled?

A   No, ma'am. *It's not.*

Q   Both are not?

A   My – it be up every time I go to the doctor. *My cholesterol.*

(R. 34)(emphasis added).

plaintiff's impairments in combination in evaluating plaintiff's claim. (See R. 14)(finding that plaintiff does not have "an impairment or combination of impairments" that meets or medically equals the listings).  Plaintiff's contention to the contrary is without merit. See Wilson, 284 F.3d at 1224-25 ("[T]he ALJ specifically stated that 'the medical evidence establishes that [Wilson] had [several injuries] which constitute a "severe impairment," but that he did not have an impairment *or combination of impairments* listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.' (emphasis added). The ALJ's determination constitutes evidence that he considered the combined effects of Wilson's impairments.").

## CONCLUSION

Upon review of the record as a whole and the arguments of the parties, the court concludes that the decision of the Commissioner is due to be AFFIRMED.  A separate judgment will be entered.

DONE, this 26th day of October, 2011.

/s/ Susan Russ Walker
SUSAN RUSS WALKER
CHIEF UNITED STATES MAGISTRATE JUDGE